MEAD vs. HEIN and SCHMIDT.

28      533
59 LRA 902n|

FLOWAGE OF LAND BY MILL-DAM. (1-5) *Rights of vendor and vendee, respectively, in respect to damages.*
REVERSAL OF JUDGMENT. .(3, 4, 6, 7) *For what errors a judgment will be reversed.*
EVIDENCE. (5) *Deed of the land flowed, made* pendente lite.

1. The vendor (and not the vendee) of lands flowed by a mill-dam at the time of sale, is entitled to the damages for the perpetual flowage of such lands. *Pick vs. Rubicon Hydraulic Co.* (27 Wis., 433), followed.
2. The vendee can therefore recover only damages caused by any increase in the height of the dam subsequent to his purchase.
3. In an action by which such a vendee sought to recover *all* damages caused by the dam after his purchase, erroneous instructions touching the question how far he was chargeable with notice of an unrecorded deed from his vendor to the owner of such dam, granting the right to maintain it at the height at which it existed when plaintiff purchased, could not injure the plaintiff; and a judgment for defendant will not be reversed for such error.
4. An instruction that plaintiff could not recover unless the dam had been raised *within ten years*, contained no error against him; although the court should have added that he could not recover unless the dam had been raised *since his purchase* (which was within the ten years).

5. It was error to admit in evidence a deed by which plaintiff had conveyed, pending the action, a portion of the lands flowed, reserving to himself therein the fruits of the litigation. Such reservation did not change his rights; and the deed was not admissible to show the value of the land, or for any other purpose.

6. A judgment will not be reversed for the admission of immaterial evidence, unless there is reason to believe that the jury may have been misled thereby.

7. In this case, the defendant's counsel having insisted in this court that plaintiff should not be allowed to recover except *upon the clearest evidence*, partly upon the ground that he had thus reserved to himself the fruits of the litigation, the court presumes that the same appeal may have been made to the jury; and there not being a clear preponderance of evidence against plaintiff's claim that the dam was raised after his purchase of the land, it is not clear that the jury, in finding for the defendant, were not misled by the admission of said deed in evidence. A new trial is therefore awarded.

APPEAL from the Circuit Court for *Jefferson* County.

The plaintiff appealed from a judgment in favor of the defendants. The case is stated in the opinion.

*Enos & Hall*, for appellant, to the point that the erroneous admission in evidence of plaintiff's deed of the land, made *pedente lite*, must be supposed to have prejudiced the plaintiff's rights, and that the judgment should be reversed for such error, cited *State Bank v. Dutton*, 11 Wis., 371; *Remington v. Bailey*, 13 id., 332; *Castleman v. Griffin*, id., 537. In reference to the instructions given at defendants' request, they argued, 1. That the first instruction was erroneous. There is no pretense that the land was flowed so as to exclude the owner from the possession. If one wishes to preserve rights conferred on him by deed, as against a subsequent purchaser for value, in good faith, he must record his conveyance. R. S., ch. 36, sec. 25. There was nothing in the circumstances here to lead *Mead* to suppose that defendants were flowing this land by virtue of an unrecorded deed, rather than under the provisions of the Mill-Dam Act. 2. That the second instruction is too general. *Parker v. Kane*, 4 Wis., 1; *Bull v. Bell*, id., 54; *Lamont v. Stimson*, 5 id., 443; *Ely v. Wilcox*, 20 id., 523.

*Orton & Mulberger*, for respondents, contended, among other things, that there was no evidence of increased flowage since plaintiff purchased the lands in question; that none of the errors complained of affect the merits of the case; and that this court would not, any more than the court below, disturb mill property so valuable both to the owners and the public, so ancient in its use and enjoyment, without the clearest evidence, and especially where the plaintiff has sold the block *pendente lite* and *reserved the litigation.*

LYON, J. Action under the mill-dam act (Revised Statutes, chap. 56.)

On the 17th day of March, 1866, the plaintiff became the owner of fourteen lots in block No. 16, in the village of Waterloo, county of Jefferson; and on the 17th day of January, 1867, he became the owner of two other lots in the same block. A stream of water called the Waterloo creek bounds said block on the south and east, and the defendants own and occupy a mill, mill dam and water power on that stream, below the lots of the plaintiff. They became the owners thereof September 9th, 1865, by a conveyance from one Mary E. Rood, who at that time owned the property. The dam and water power had been maintained there by Mrs. Rood and her grantors for many years before. In March, 1866 (being about the time of the plaintiff's purchase of the fourteen lots), the dam went out. The defendants rebuilt it, and completed the job in November following.

There is considerable evidence tending to show that when the defendants rebuilt their dam, they raised the water in the stream higher than it had before been raised, and have ever since maintained it at such increased height. On these points, however, the testimony is conflicting; there being testimony tending to show that the defendants have not, by the new dam, raised or maintained the water to any greater height than did their immediate grantor, Mrs. Rood.

It appeared by the evidence that the defendants had the right

to maintain a head of nine feet, so far as lots No.'s one and two are concerned, by virtue of a deed from a former owner of those lots to a former owner of the mill property, executed and recorded in 1859.    This right does not seem to be disputed by the plaintiff.

On the trial, the defendants, under objection by the plaintiff, were allowed to give in evidence a deed from plaintiff to one McDonald, of nine of the lots first purchased by the plaintiff; in which deed the plaintiff expressly reserved to himself the fruits of this litigation.

The defendants also gave in evidence the contents of a lost deed, which was never recorded, executed in 1863, by Mr. Drew (the immediate grantor of the plaintiff, and who was then the owner of the lots subsequently conveyed by him to the plaintiff), to Mrs. Rood (the immediate grantor of the defendants, who then owned the mill property); by which deed Mr. Drew granted to Mrs. Rood the right to maintain the dam in question, and the water in the stream, to the height of nine feet. This right, of course, relates to the fourteen lots first above mentioned.

The undisputed evidence shows that when this deed was executed, Mrs. Rood was maintaining and using a head of water of nine feet; and there is no evidence that there was any change in the head of water until the dam went out in March, 1866, and was rebuilt by the defendants.

The circuit judge refused to give the jury an instruction asked on behalf of the plaintiff, to the effect that the plaintiff is not affected by the deed from Drew to Mrs. Rood, unless he had notice thereof at or before the time he became the owner of the lots.

At the request of the defendants, the court gave the following instructions to the jury, to each of which the plaintiff did then and there except:

"1st. If the water flowed over the land of the plaintiff by means of the mill dam, the same before and at the time of the

purchase of the property, as after the purchase of the property, and the plaintiff knew it, such flowage was notice to *Mr. Mead* at the time of such purchase, sufficient to put him on inquiry as to the right of the owner of the dam to cause such flowage. Under such circumstances, the purchaser should exercise the same degree of caution in ascertaining what easements his projected purchase is liable to, in favor of his vendor, as in favor of other adjoining owners."

"2d. Any facts and circumstances sufficient to put *Mead* on inquiry as to the deed of Drew to Mary Rood, before his purchase, will be sufficient notice of the existence and terms of said deed."

The court also instructed the jury that the plaintiff could not recover in any event unless there had been an increase in the height of the water in the pond within ten years immediately preceding the commencement of the action; to which instruction the plaintiff also excepted.

It is unnecessary to state more fully the proceedings upon the trial.

The defendants had a verdict and judgment, and the plaintiff brings the case to this court for review, by an appeal from such judgment.

In the case of *Pick v. Rubicon Hydraulic Company*, 27 Wis., 433, I had occasion to examine the question as to the right of a person purchasing lands which had previously been flowed by virtue of the mill-dam law, to the damages therefor, in cases where such damages had not been paid to his grantor. After a careful consideration of the authorities, I reached the conclusion that the party who owned the land when it was first flowed—when the easement was acquired,—and not the subsequent grantee of such party, is entitled to the damages therefor. I am yet of the same opinion. I will not repeat the views there expressed, but will content myself by a reference to the decisions of this court, which, it is believed, established this doctrine, and which were commented upon in the opinion in that

case. *Faville v. Green,* 12 Wis., 11; *Newell v. Smith,* 15 id., 101; *Cobb v. Smith,* 16 id., 661; *Kutz v. McCune,* 22 id., 628; *Pomeroy v. N. W. Ry. Co.,* 25 id., 641.

It follows from this view of the law, that the plaintiff could only recover damages for the increased injury to his lots occasioned by raising the water to an increased height after he became the owner of them. The perpetual damages to the lots by reason of keeping the water to the height at which it was being maintained when the plaintiff purchased, belong to his grantor, who owned the lots when the water was raised to that height. The fact, then, that the defendants had their head of water up to nine feet at the time plaintiff became the owner of the lots (and such is the uncontroverted evidence), renders the evidence of the contents of the deed from Drew to Mrs. Rood, and, consequently, the instructions of the court and the refusal to instruct on the subject of notice thereof to the plaintiff, entirely immaterial. The defendants were in the possession of the easement, and the right to the damages to the lots in question for the perpetual enjoyment thereof had vested in Drew, the plaintiff's immediate grantor, before the plaintiff became the owner of such lots; and it was not of the slightest importance to the plaintiff, whether Drew had conveyed the easement to Mrs. Rood and received payment therefor, or whether he still held a right of action against her to recover damages occasioned to the lots by the user of the easement. Hence it was of no importance to ascertain whether the plaintiff was or was not chargeable with notice of the existence of such deed, and the rulings of the court on that subject, even conceding them to be erroneous, could not prejudice the rights of the plaintiff. The most that the jury could have found under the instructions was, that the plaintiff had notice of the deed and was bound by it. But he was bound to the same extent, as we have seen, without notice of the deed. So the instructions on this subject, whether right or wrong, were inoperative, and therefore perfectly harmless.

The instruction as to the ten years' limitation, if erroneous at all, is an error in favor of the plaintiff. The learned circuit judge would have stated the law with greater precision, had he told the jury that the plaintiff could not recover in any event, unless there had been an increase in the height of the water in the pond since the 17th day of March, 1866. There is nothing in this instruction of which the plaintiff can justly complain.

But the court erred in admitting as evidence the deed from the plaintiff to McDonald of a part of the lots described in the complaint. It was clearly irrelevant. By it the plaintiff reserved the fruits of this litigation; and had he not done so, according to the principles above stated, his right of action would have remained unaffected thereby. It was claimed by counsel for defendants, on the argument, that it was admissible for the purpose of showing the value of the lots conveyed by it. But it was not admitted for any special purpose, but generally, as evidence in the action. If it was only intended to use the deed. for the purpose indicated, the counsel should have so stated when the objection was interposed, to the end that the court might have restricted its effect to that particular object. This was not done.

Is this error fatal to the judgment? The rule, as laid down by this court, is, that judgments will not be reversed for the admission of irrelevant testimony, unless there is good reason to apprehend that such evidence had an improper influence upon the jury. *Fowler v. The Farmers' Loan and Trust Co.*, 21 Wis., 77. See also *Ellis v. Short*, 21 Pick., 142 and cases cited; *Bank v. Dutton*, 11 Wis., 371; *Remington v. Bailey*, 13 id., 332.

We think that there is good reason for such apprehension in this case. We find the following paragraph in the brief of counsel for the defendants: "We submit, finally, that this case rests upon no evidence, and is most grossly inequitable and unjust, and this court, no more than the court below, will disturb mill property so valuable, both to the owners and the public, so

ancient in its use and enjoyment, without the clearest evidence, and especially where the plaintiff has *sold the block pendente lite*, and *reserved the litigation.*"

The learned counsel here invokes this court, because of the existence of certain facts, of which the execution of this deed is one, to apply to this case a more stringent rule of evidence against the plaintiff than would otherwise be applied, and instead of deciding as the evidence preponderates, as in other civil actions, to hold that the plaintiff must prove his case *by the clearest evidence* before he can have any relief.

If the same appeal was made to the jury in the circuit court on the trial of this action (and it is perhaps fair to presume it was there made), it is difficult to believe that it had no effect upon their minds adversely to the plaintiff. While we do not say that the evidence tending to show that the defendants raised their head of water after the plaintiff became the owner of block 16, whereby that block was injured, preponderates over that tending to show the contrary, yet there was so much direct evidence to support the theory of the plaintiff in this behalf, that we are impelled to believe that there is good reason to apprehend that the jury were misled by the deed to the prejudice of the plaintiff, and that they made up their verdict upon the principle that the plaintiff ought not to recover, in view of the facts of the case, without the *clearest* evidence; *and this the more especially* because he had sold the block *pendente lite*, and reserved the litigation. For this reason we think there should be a new trial.

*By the Court.*—Judgment reversed, and a *venire de novo* awarded.

Note by Lyon, J. When the foregoing opinion was written, my attention had not been directed to the case of *Bonner v. The Home Ins. Co.*, 13 Wis., 677. The chief justice there says: "The rule is universal, that when the evidence offered is competent for some purposes, but not for others, the party objecting or desiring to limit its effect must distinctly specify the grounds of his objection, and then, if they are not obviated by

proper instructions to the jury, the error will be corrected on appeal." p. 186. See also *Knapp v. Schneider*, 24 Wis., 70.

Yielding a cheerful obedience to the rule there established, I freely concede, notwithstanding what is said in the opinion in the present case, that if the deed from the plaintiff to McDonald was admissible for any purpose, it was not error to admit it against a general objection thereto. But I am still of the opinion that the deed was entirely irrelevant either to prove the value of the lots, or for any other legitimate purpose, and therefore that the general objection thereto was sufficient.